All right. I don't know whether we're all together. But if we are, is everyone ready to proceed with the case of N. Ray Howard Rubinstein? Council is present, Judge. Mr. Oster. Thank you very much. May it please the court. I represent Howard Rubinstein. This case is about fairness and due process. Can a court, when imposing reciprocal punishment as entered by a sister jurisdiction, can that court drastically increase the punishment without providing a clear and convincing reason for doing so? The answer is no. Due process and fairness require that the sister court's order be given due respect and not deviated from unless the are several reasons why this is the case. But they are all rooted in this idea that it was the first court that provided the process. The first court heard from the witnesses, conducted a trial, took in exhibits, and then rendered a decision. So their decision should be given deference. This is not a lot unlike this court when reviewing a trial below will give deference to that court's decisions. All right. This matter started when the United States District Court for the Southern District of Florida issued a show cause order to Mr. Rubinstein asking him why identical punishment should not be entered against him in the Southern District as was rendered against him in Texas. In that Texas case, Mr. Rubinstein received a two-year probated suspension for improperly filling out ProHoc VJ motions. I will note that these ProHoc VJ motions were actually filed in federal courts in Illinois and California. Those courts did not discipline Mr. Rubinstein, but he's also barred in Texas and that was the jurisdiction that issued the punishment. All right. And so Mr. Rubinstein agreed to the imposition of identical punishment. But it was at this point that the Southern District learned of four other instances where Mr. Rubinstein's name appeared on cases filed by another lawyer and signed by that other lawyer within the Southern District. And so the Southern District believed that those instances where the other lawyer included his name on pleadings constitute the unauthorized practice of law about Mr. Rubinstein. All right. Now, as this court decided in this previous decision on this matter, the Southern District then improperly disbarred Mr. Rubinstein based on all of these matters without following its own written procedures and allowing Mr. Rubinstein to respond to the new charges in an evidentiary hearing. All right. So this court then reversed that order of disbarment and sent the case back for further proceedings, which would have included the right to an evidentiary hearing on the new matters if the Southern District determined to pursue those. But this court did take notice that the other matters, sorry, this court can take judicial notice that those other matters have been resolved now. And the court did not discipline Mr. Rubinstein based upon the unauthorized practice of law. But that's not this case, that's just the court can take judicial notice of that. All right. The court did note that after the imposition of reciprocal punishment, the Southern District was free to continue with that matter. Now, the Southern District interpreted this to mean it was free to consider Mr. Rubinstein disbarred, even though there was no court order stating that he was disbarred and that it was free to disbar Mr. Rubinstein based on the imposition of reciprocal punishment. And that is what the Southern District did based solely on the issue of reciprocal punishment of an order of a two-year probate suspension. The Southern District disbarred Mr. Rubinstein without providing any reasons for the drastic escalation of the punishment. Now, we believe the Southern District erred when in a reciprocal punishment matter, it drastically escalated the punishment from a probated suspension to disbarment without giving clear and convincing reasons for doing so. Now, in matters of reciprocal punishment, the presumption is that the new punishment will be identical or as identical as possible to the original punishment. Now, there is good reason why this is the case. The first court is the primary court responsible for providing the process to a lawyer. In fact, in reciprocal punishment cases, what happens is if a second court wants to issue reciprocal punishment, they don't have to give a new trial. They don't have to give a new hearing, hear from witnesses, anything like that. All they have to do is provide it, make sure it was constitutional due process type of process, and they can issue the reciprocal punishment. Let me ask you a question about this. For whatever reason, and I'm going to ask the other side this, the judges of the Southern District of Florida do not like Mr. Rubinstein. What relief are you seeking from us? What is it that you're asking us to tell the Southern District that it has to do in light of this? What do they need to do? Good question. We believe there is a problem of you can't unring the bell. We do think that if you look back at what actually happened, and there was this hearing where this court in the original opinion said that they didn't follow their proper procedures in giving proper notice. Mr. Rubinstein was somewhat caught by surprise, and then it was his alleged cavalier response that was the reason for this additional punishment. So sometimes first impressions are lasting impressions, and it's awfully hard to unring the bell. We would like this court to send this case back to start again with the ad hoc committee. That's what happened with the other four charges that it was sent back, went to the ad hoc committee, and that process we believe resulted where the bell was unrung, if you will. And so we would ask that. I'll say you have very good arguments, I think, based on other bars rules, but where would you situate your arguments in the Southern District's rules? Because as I read it, it says that the Southern District may impose the identical discipline or may impose any other sanction the court may deem appropriate. Yes. So we believe that in reciprocal punishment cases, the case law followed by all the cases that have been cited. I'm not aware of a case that goes otherwise. States that the presumption is identical punishment. Now, does that mean they have to issue the same punishment? No, they can't increase it, but they have to have clear and convincing reasons for doing so. The case offered up by the appellee is the Florida Bar v. Kahalas, I believe, it's in the material, provides a great example on how that works out. In that situation, the original punishment that was given by Massachusetts was a four-year suspension. The Florida court said, we don't think that's enough. This is bribing a public official and gave very specific reasons why it escalated that punishment to disbarment. And that makes sense in that context, because they are given specific reasons saying we view this extra bad in our jurisdiction. We don't have to look at the facts again, we're going to take them as given. That didn't happen here. There was no reason given. Once this court sent the case back on a matter of reciprocal punishment, they just said, okay, disbarred and did not utter a word as to why the person should be disbarred. And we believe that is what violates the process that was owed here. I guess that's what I'm asking, is the process established by what? Are you making a federal constitutional due process claim? Are you making a claim of a violation of some of the Southern districts bar rules that require process? Where are you situating this due process claim that you're raising? It would be under both the idea of federal due process. What is the process that is owed here? And the standard is that in a court must follow its rules and procedures and in reciprocal punishment cases, the presumption is identical punishment or as near as identical as possible. And if you're going to go beyond that, you need to give clear and convincing reasons that justify the deviation that gives the proper deference to the first court because the first court is one of the witnesses. I'll confess that I tend to agree with you just as a matter of first principles, what you're saying makes sense to me. But what I'm having a hard time doing is finding those principles and the rules that the court is operating under here. I think it's a due process concerns that undergird the issue of disbarment. For example, in in Ray Ruffalo, the Supreme Court said that these matters attorney disbarment are quasi criminal matters. And the and so due process is owed to the to the attorneys that are involved. So in this kind of situation, when the first court is the court that heard from the this is the punishment that should be afforded in this situation. The second court has to give deference to that. Finally, if they just go out on their own, then Mr. Rubenstein is lacked the opportunity to present his case to present witnesses to to cross examine people. If if if he can't rely somewhat on the initial trial and decision from that trial, when agreeing to reciprocal punishment, I think it's going to undergird the entire reciprocal punishment process if you can't rely on the findings from the initial court. Now, again, this is not to say a second court can't increase that punishment, but they have to have good reason for doing so. If you do not have that requirement of you, they have to have a clear and convincing reason for deviating from it. It is going to undergird the entire process. And I believe we put in a violation of the due process rights. I think when you look at this case from the context of what all the courts did, it really shines light as to the problem. All the other courts that consider this matter issued these punishments. The first of the Illinois court in the Illinois court and the California court did not punish Mr. Rubenstein. Those were the actual courts where the Prague VJ motions were filed. The Texas court issued a two year probated suspension. The Florida Supreme Court said a 90 day suspension. The United States District Court, District of Columbia issued a public rubber man. This court ratcheted up to disbarment without any reason for doing so, and we believe that's what violated his rights. And I thank you, your honors. Thank you. Good morning, your honor. Tom Scott appearing on behalf of the United States District Court for the Southern District of Florida. Very proudly. I'd like to start off by quoting what this court said in its last opinion, which I think goes mountains on remand. Then the Southern District is free to enter a new order imposing reciprocal discipline without any further process, any further process. And because Rubenstein had full and fair due process as the Texas judgment and the Southern District Local Disciplinary Rule three provides notice that any sanction may be imposed when reciprocal discipline is considered. Nothing here and restricts the Southern District as to what the appropriate discipline should be based on solely the Texas judgment. And that's exactly what this court did upon remand. The chief judge had an immediate hearing with Mr Rubenstein, President and his lawyers. He discussed the order of the 11th that they were going to vote on the Texas judgment. In effect, he bifurcated it. He said, I'm proceeding solely on Texas, which has been affirmed. There's no further discussion. And I'm going to send back to the ad hoc committee the activity that he did in Florida for reconsideration. Remembering now that the ad hoc committee had already considered the Texas judgment and this court found that their actions were appropriate. He even gave them an opportunity to file a written response, notwithstanding the fact that it has basically been completed. They asked for 104 day extension to file a response. 104 days. He grants it. They wait 104 days. And what is the response? It's three pages with two documents. He knew that the possibility of disbarment was on the table all along. There was no request for a hearing. None. And he still gave them an opportunity to proceed. There's two questions here. One is abuse of discretion. Second is lack of due process. Let me do it in reverse order, because I think the due process is easy. First, we have an opinion by your honors in this court saying he's already had all his due process on the Texas judgment. That's what it says. Notwithstanding, too, the judge offered them an opportunity to respond and file additional pleadings. They wait 105 days and give a three-page response. Three, they never requested any form of hearing. Ergo, no due process issue whatsoever as far as the way this was handled in the trial court level. Let's turn to the abuse of discretion argument. First of all, there's some play about the issue about whether this is an abuse of discretion. The only thing is, is there some error in law? That's it. Here's the question I have for you, Mr. Scott, which is I don't understand why the Southern District disbarred the lawyer. I really just don't get it. I looked at the order. It doesn't explain why they disbarred him. Your brief explains why one might disbar this lawyer, but there's just no order that explains why they chose disbarment as the appropriate punishment. Let me say this to you about that. You asked what record evidence is they should disbar this man. From pages 8 through 12 for five pages, we replete with the things this man has done. He has been disbarred in Texas for 10 years. He's had a judgment. Mr. Scott, are you talking about the committee report? Is that the Texas record? Add to the Texas record. That was filed in as part of the record here. The activities that went on in Texas. The judgment of the court in Texas. I mean, I know that's what you point us to, but I would just follow along with Judge Brasher's observation that we don't know that's what the court relied on. I mean, they don't end the order of disbarment this time around. They don't refer to the committee's report and recommendation. They don't make any factual findings. We've got a rule on this case, and it always just helps to have some sort of record to review, and we just don't have one. Judge, you have the record. The record is replete with all the things that he has done in the past, which constituted the basis of the disbarment. We don't have a record. We don't have a rationale for why the court did what it did. We don't have the court's own explanation for why it did what it did. Judge, the judge entered a three-page order. All this evidence is in the record. They obviously relied upon it. How many times do you see an unanimous court do anything, but this court unanimously, and even with the senior judges, all agreed that this man should be disbarred. I will say, from my perspective, having served as a Georgia Supreme Court justice, one of our functions was handling bar discipline, and whenever we unanimous, and we wrote a lengthy opinion explaining why. Why shouldn't the Florida court be held to the same standards so that we can review it? Well, Judge, all I can say to you is that we cited one case from the New York Second Circuit that says written opinions aren't required. I think it's K-U-O-I-R-A-N. Also, the fact that this thing has been briefed, all the evidence is replete. Seriously, Judge, the evidence against this man's misconduct has been going on for 20 years. Just give me one minute, seriously. He's been disbarred. He's been suspended twice in Texas. He has lied in 11 applications in California and Illinois federal courts. He files an affidavit, and this is all in the record. It's all in the record. He files a California affidavit admitting to all this misconduct, and he immediately turns around and does it again in an Illinois federal court. He's failed to file Ph. Prohoc Vichy admissions in California. Here's the thing, this man, Judge Brasher, you asked me why would the court move from this to disbarment, and I'll tell you why. Because this man has had nothing but multiple slaps on the risks by every court that's touched it. California, Illinois, the Florida Supreme Court, they've adopted, they've adopted. None of them took any action. The ad hoc committee that interviewed him in the Texas judgments, and it's in the record, the ad hoc committee observes that the man had a cavalier attitude, really didn't give a darn in his responses. It's no wonder the man continues to do it. Now, in all these misrepresentations, all these things he's done, he has violated the ABA and the state bar rules, including Florida, which require candor to the court and prohibit conduct involving deceit. And the Florida bar says that that type of conduct, which the local rules adopt the Florida bar rules, says is worthy of being disbarred. It sounds though like those reasons are perhaps separate from the Texas decision. No, these are all based on the decision. All of the California references? Yes, absolutely. They go through all 11. It's all in. It's in the record. It's in there. It's in volume of the record. Absolutely. All of this. And we cite to every one of these from the record in our brief from pages 8 to 12. Now, this court finally has enough gumption to say, we're not going to condone it. We're not going to condone this this man in our court. And they do it unanimously. I mean, I think this court took the exact appropriate action and it was warranted. So that's how I would answer your question, Judge Brasher, about why you think this should be escalated. This man has got nothing but slap on the wrist, and he continues to do it and lie and lie and lie to federal courts all across the country. Has anyone, has any, has there been any finding by anyone? I mean, and maybe you're right. I have no idea. But has there been any finding by anyone that these ProHog v. Chay applications were intentionally dishonest and that it wasn't just, you know, it was cited in the petition and in the and in the judgment in the Texas court. They were intentional. Yeah, the Texas Disciplinary Committee. And that's in the record. That's all in the record. So, you know, and as, does he have the authority to do this, the court? Yes, they do. Because our local rules, Rules 1, 3, and 5, and even the 11th Circuit made note of it, gives them the authority to disbar. And he's put on notice that disbarment's going to happen. And this includes in a reciprocal proceeding. So he's on notice. It's all in there. It's all, and that's what they follow. So, and in fact, the rules of the Southern District of Florida adopt the Florida Bar Rules, and that includes Florida Bar Rule 5.11, which states that lack of candor and the prohibitions against dishonesty in front of judges constitutes a basis for disbarment. So they took advantage of it. Their own rules gave them the authority to do this, and they did it. Let me ask you this. Let's say we were to adopt a rule that just requires a court to give an explanation for disbarring someone as a matter of due process, or as a matter of just being in charge of the profession. We just say, that's the rule. The court can't disbar someone and prevent them from practicing without an explanation. If that were the rule, would there be any basis for us to affirm what the Southern District did? Well, I guess it would depend whether you consider that Judge Moore's three-page order sufficiently to do that. And if you didn't, then I guess you could adopt that rule. You could adopt that rule. But that rule- What on his three-page order then? Where would that, I mean, I think this is important to me. Where would it meet that? It's in volume two of Pound's appendix. I've got the order in front of me. I'm saying, where in it does it give an explanation? It just says that it cites to the 11th circuit. It says, we met, we did it, and we're disbarring him. I agree. That's what it says. Okay. So it doesn't give an explanation? It does not give an in-depth explanation like you're suggesting. Well, what is the explanation? I guess I'm just saying, what is the explanation? Just we all considered it. And as a result, we believe he should be disbarred. That's what it says. On this issue of reciprocity, I think I've already answered that. We rely, there's several cases, Kramer and the Selling v. Radford case that says that he has the burden of coming forward and not the court. So it's his burden on that issue. And again, on the issue of the written order, Judge Brasher, the most I can say is that the In Re Quo Iran case says that it's not required. And as I can only say this, I mean, none of this came as a surprise to him. It's all the evidence is laid out. It's been laid out in various pleadings. And we've laid it out again today for you. So, I mean, the judge did not enter a lengthy written order. And so that's, I mean, that's it. But besides that, the evidence is there to support the order. It's all in the record. The court did what it did. And it took an action that quite frankly, these courts should have done prior to this time. And nobody had the, really nobody had the gumption to do it except the Southern District of Florida and say, we just don't want a man that's done all of these lies over all of these years appearing in front of us. I think that court has the right to do that. Now you can be critical and say, okay, maybe we should remand this thing and have the judge write an order or something and do something along that lines if that's what you want to do. I don't think that's required, but if that's what you want to do, that's one thing. But I'm just saying to you, seriously, Rubenstein has been misrepresenting forever. He's been suspended. He's had multiple slaps. I mean, this court finally had the gumption to do something right and they did it. And it is what it is. And so that's, that's our position judge. Thank you. Appreciate it. Thank you for your time. Mr. Esser. You're on mute, Mr. Esser. You're still on mute. All right. Thank you very much. I'm going to respond first to the, uh, the question about was the Texas court find any findings of intentional lying? The answer is no, it did not. It is not there. It's not in the record. And one that in fact, the record shows the opposite, that these forms were filled out by other people, the paralegal, he didn't review them. He did not review them as well as he should have. In fact, one of the forms actually had changed from the intentional lying. Now is Mr. Rubenstein responsible for signing a form that was incorrect? Yes, he is. But we all recognize, and he admitted that he was responsible for that during the hearing. But there is a difference between intentionally lying and deceiving and then just being haphazard. I will state the court can take judicial notice of what happened with the other cases that went forward. The court reviewed that and found that Mr. Rubenstein had a problem with office management. He did. And so they put that in that order that, you know, take a class to learn how to manage your office properly. When it went back to the ad hoc committee a second time, they rightfully saw what was the problem, the office management issue, and they made him correct that. And we were very happy with that result. But here, you just heard a lot of accusations that are not unfounded here. Let's take a look at the previous disbarment. Texas did disbar him at the beginning for things that he did before becoming a lawyer, way back when. That was the original disbarment. That was Texas. Texas then readmitted him. Florida, the Southern District, admitted him after all that happened in the past. That is not a long history of intentional lying. And that's one of the problems you have when the proper process is not followed. And so the Texas court is the one to owe the process, had the trial, heard from the witnesses and said, we get this. We understand what's at issue here, the forms. We don't find this was necessarily, I'm supposing a little bit you don't see this in any, you don't see any analysis, but the determination was two-year probate suspension. So you can infer from that. They did not view this as being intentional deception of a repetitive nature, like what you are seeing now as being the basis for possible disbarment, which goes to your questions about, should we not have reasons given? The answer is yes. And the reasons have to be given below, not in a response brief, because number one, the response brief is not a vote by the entire court. It is just something that is put in a briefing on behalf of the Southern District, but we definitely didn't have a decision to appeal based upon that. They analyzed that in our initial brief and how we presented the case. It needs to be done below so that we can then make our decision, our legal strategies based upon that and not in a response brief. I'm going to respond to the suggestion that they don't have to give the reasons. You can just summarily enter an order on reciprocal punishment cases. We agree with that. If the matter is going to be identical punishment or as near as possible to identical punishment, that makes sense. You can't just simply say, yes, you gave a two-year probate suspension. We're going to give a two-year probate suspension. That makes sense. But to say otherwise would be like, let's say the first court told Mr. Rubenstein, we're going to take one acre of your property. And this court were to say, well, based upon the same thing, we're going to take a hundred acres of your property and not give a reason. Inherently, that's unfair. You have to give a reason when you ratchet it up. I think as you saw demonstrated in this case, there is some ill will, and I don't know where this ill will came from. It's not justified in the record. None of the other courts saw it. Texas did not see it. I can only think that this came from this poorly called, improperly called hearing the first time around, where proper notice was not given. And I do believe that Mr. Rubenstein was caught off guard. He did answer honestly. You can't find any of his answers that weren't true, but they used his cavalier attitude. And I don't even know what cavalier attitude is, but nonetheless, we do think if you're going to disbar someone, you owe it to them to give the reasons why, so that we have a basis to appeal it. Also, the other judges in the Southern District can also review that themselves and say, yes, we agree with that. Back to the first question you asked about remedy. We do think it would be very beneficial to send this case back to the ad hoc committee where this began. I think that's where the problem started. The bell was rung with that ad hoc committee meeting. That was a surprise meeting. I think we're seeing the point of the fruit from the poisonous tree from the situation. We would ask that this gets sent back to that level so we can start there and hopefully with a clean slate and not based upon ideas and preconceived emotions from that first hearing. And with that, we rest on our briefs. Thank you very much. We have the case and that concludes our arguments for the day.